BARTLETT, LEADER-PICONE & YOUNG, LLP
MALCOLM LEADER-PICONE *(State Bar No. 104620)*
2201 BROADWAY, SUITE 803
OAKLAND, CA 94612
TELEPHONE: (510) 444-2404
FACSIMILE: (510) 444-1291

Attorneys for Defendant, specially appearing
BROOKS HENDERSON HADEN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

IRETA IRBY

           Plaintiff,

vs.

BROOKS HENDERSON HADEN

           Defendants.

|   |   |
|---|---|
| ) | No. 3:08-c-80004-PJH |
| ) | |
| ) | **REPLY MEMORANDUM IN SUPPORT** |
| ) | **OF MOTION OF DEFENDANT** |
| ) | **BROOKS HADEN FOR ORDER** |
| ) | **VACATING JANUARY 11, 2008** |
| ) | **REGISTRATION OF FOREIGN** |
| ) | **JUDGMENT AND FOR PERMANENT** |
| ) | **INJUNCTION AGAINST** |
| ) | **ENFORCEMENT OF THE TEXAS** |
| ) | **JUDGMENT IN CALIFORNIA.** |
| ) | |
| ) | Date:   May 14, 2008 |
| ) | Time:   9:00 a.m. |
| ) | Crtrm: 3, 17th Floor |
| ) | Hon. Phyllis J. Hamilton |
| ) | |
| ) | |

/ / / /

/ / / /

/ / / /

# I.    PRELIMINARY STATEMENT.

Plaintiff Ireta Irby's arguments are disturbingly contradictory and are certainly desperate. First, she tries to apply an obscure Oklahoma case to enforcement of a judgment that is governed by California law. Then, in a supplemental brief, she cites the report of an unpublished Ninth Circuit case in a journal as authority.

In so doing, plaintiff misreads and misrepresents California law governing the enforcement of her judgment. Although plaintiff has preserved the enforceability of her judgment in Texas, she cannot disregard the laws of California when trying to enforce it. The undisputed facts establish that the plaintiff's judgment, properly registered in this Court on August 20, 1996, based upon a Texas judgment, expired. Consequently, plaintiff is not permitted another California judgment on the same claim through her registration of the Texas judgment for a second time.

Therefore, defendant is entitled to an order from this Court (1) vacating the second registration of the Texas judgment; and (2) permanently enjoining plaintiff from any further attempts to enforce the Texas judgment in California.

# II.    ARGUMENT.[1]

## A.    THE CASES THAT PLAINTIFF CITES ALL STAND FOR THE PROPOSITION THAT THE LAW OF THE FORUM GOVERNS ENFORCEMENT OF THE JUDGMENT.

Plaintiff leads off her opposition with the case of *Yorkshire West Capital, Inc. v. Rodman*, 149 P.3d 1088 (2006), in which an Oklahoma intermediate appellate court, applying Oklahoma law to enforcement of a Texas judgment in Oklahoma, held that nothing in Oklahoma law prevented a Texas judgment from being registered for a second time in Oklahoma. This Oklahoma case is completely distinguishable from the case at bar, because, unlike Oklahoma, California does have a statute of limitations that bars commencing enforcement of a foreign judgment after the

---

[1] Irby's untimeliness argument is unfortunate, specious, and moot. First of all, defendant would have moved the hearing date, if plaintiff's counsel had called and asked for more time. Secondly, the arguments defendant filed were ones that plaintiff had previously seen in this Court and in the Bankruptcy Court. Thirdly, plaintiff took an additional week to come up with a whole new argument which defendant will address below.

passage of ten years (*Cal. Code Civ. Proc.*, § 337.5).

In *Yorkshire West Capital*, the Oklahoma court applied the holding of the Oklahoma Supreme Court in *Drllevich Construction, Inc. v. Stock*, 1998 OK 39, 958 P.2d 1277[2], to determine that Oklahoma would permit a Texas judgment to be registered for a second time, because Oklahoma's five year dormancy period for enforcement of judgments would otherwise impermissibly discriminate against the Texas judgment, which had a 10 year dormancy period. Nevertheless, the Oklahoma court was clear in recognizing that it was Oklahoma law which governed the enforcement of the judgment in Oklahoma, including the statute of limitations for enforcement:

> We find nothing in the Act which bars a foreign judgment from being filed again in Oklahoma so long as it remains enforceable in the issuing state. Consistent with this view is the notion that the filing of a foreign judgment under the Act creates a new Oklahoma judgment. *Drllevich*, 958 P.2d at 1281. Both the original judgment and the new judgment will then be viewed independently for purposes of collection, renewal, and enforceability. That is, the Texas Judgment will be governed by Texas's dormancy statute of 10 years, and the Oklahoma judgment will be governed by Oklahoma's five year dormancy statute. There is no question that after five years of inaction, the Oklahoma judgment, created by registration in 1996, became unenforceable.

In so holding, the Oklahoma court cited to *Watkins v. Conway*, 385 U.S. 1988 (1966), in which the Supreme Court had held that Georgia's five year statute of limitations on enforcement of foreign judgments did not impermissibly discriminate against foreign judgments, so long as the foreign judgment from Florida could be revived in Florida:

> But the interpretation which the Georgia courts have given § 3-701 convinces us that appellant has misconstrued it. The statute bars suits on foreign judgments only if the plaintiff cannot revive his judgment in the State where it was originally obtained. For the relevant date in applying § 3-701 is not the date of the original judgment, but rather it is the date of the latest revival of the judgment. *Fagan v. Bently*, 32 Ga. 534 (1861); *Baty v. Holston*, 108 Ga. App. 359, 133 S. E. 2d 107 (1963). In the case at bar, for example, all appellant need do is return to Florida and revive his judgment. He can then come back to Georgia within five years and file suit free of the limitations of § 3-701. 385 U.S. at 189-190; footnote omitted.

*Watkins* thus stands for two propositions: (1) a state cannot discriminate between the enforcement of domestic and foreign judgments in its statutes of limitations; and (2) it is the law of the

---

[2] *Drllevich* held that a foreign judgment which is valid and enforceable in the state in which it was issued is not barred by the Oklahoma dormant judgment statute.

state of enforcement that governs enforcement, not the law of the foreign state where the original judgment was obtained.

Applying the underlying principles of those two cases here, it is clear that plaintiff made a fundamental legal error when she placed all of her concern into whether the Texas judgment remained enforceable in Texas, while not paying enough attention to the laws of the State of California, where Mr. Haden resides.

California does not discriminate between foreign and domestic judgments. As noted in *Marx v. Go Publishing Company*, 721 F.2d 1272 (9th Cir. 1983), the registration of a foreign judgment in California creates a new California judgment, which carries with it a ten year statute of limitations for enforcement of the California judgment (*Cal. Code Civ. Proc.*, § 683.020). Whether it started as a domestic judgment or a foreign judgment, the judgment can be renewed in California for repeated 10 year terms (*Cal. Code Civ. Proc.*, § 683.110).

However, the statute of limitations issue involved in both the Oklahoma case (*Yorkshire West Capital*) and the Supreme Court case that plaintiff cited was not the statute governing the duration of a judgment, but the statute of limitations within which to commence an action upon a foreign judgment. In *Yorkshire West Capital*, the Oklahoma court noted that "nothing in the Act expressly prohibits a second filing of a judgment", referring to Oklahoma's Uniform Enforcement of Foreign Judgments Act, *Okla. Stat. tit*. 12, §§ 719-726 (2001), so long as the Texas judgment was still enforceable in Texas; because there was no statute of limitations in Oklahoma as to when a judgment creditor could sue in Oklahoma on a foreign judgment.

By contrast, in *Watkins*, the Supreme Court was faced with interpreting a Georgia five year statute on filing of an action on a foreign judgment. Because Georgia permitted a longer period in which to sue upon a domestic judgment, the Supreme Court had to find a way to interpret the Georgia five year statute of limitations on filing an action on a foreign judgment in such a way as to avoid the constitutional question. It did so by citing Georgia cases that had held that the five year statute of limitations began to run anew upon the revival of a judgment, such that a revival of the Florida foreign judgment would give the judgment creditor a new five year period within which to commence an

1  action on the foreign judgment in Georgia.

2         In California, California Code of Civil Procedure Section 337.5 governs the time in

3  which a judgment creditor can bring an action in California upon a foreign judgment.[3] This same

4  statute of limitations applies to domestic judgments. *Green v. Zissis*, 5 Cal.App.4th 1219, 1222 (1992).

5  The ten year period commences upon the date that the foreign judgment becomes final.[4] That is,

6  plaintiff had ten years from the date that her Texas judgment became final in which to bring an action

7  to enforce the Texas judgment in California.

8         Plaintiff met the ten year deadline to bring an action upon her Texas judgment when

9  she registered her judgment in California on August 20, 1996. Once plaintiff had a California

10  judgment, then plaintiff's one and only means to continue to enforce that California judgment was

11  through renewal of the judgment. As explained in *Jonathan Neil & Assoc., Inc. v. Jones,* 138

12  Cal.App.4th 1481 (2006)[voiding the renewal of a judgment]:

13         Before enactment of [*Code of Civil Procedure*] *sections 683.110 through
14         683.220* in 1982, the statute of limitations on enforcement of a judgment did not
       begin to run until the judgment was final—that is, until after the time for filing
       an appeal from the judgment had expired or until resolution of any appeal. (See
15         *Turner v. Donovan* (1942) 52 Cal. App. 2d 236, 238-239; Recommendation
       Proposing the Enforcement of Judgments Law (Oct. 1980) 15 Cal. Law
       Revision Com. Rep. (1980) p. 2028.) As the law then stood, the separate cause
16         of action for enforcement of a judgment did not accrue until the judgment
       became final. (*Turner v. Donovan, supra,* 52 Cal. App. 2d at p. 238.) Phrased
17         somewhat differently, the statute of limitations for enforcement of the judgment
       was tolled during the period from entry of the judgment to the finality of the
18         judgment. (*Ibid.*)

19         The 1982 legislation provided for a "streamlined" alternative to the filing of a
       new civil action to enforce an existing judgment. (Recommendation Proposing
20         the Enforcement of Judgments Law, supra, 15 Cal. Law Revision Com. Rep. at
       p. 2030.) In addition, the new law increased the limitations period for
21         enforcement of the original judgment from five years to 10 years. (Id. at p.
       2029.) The 10-year limitations period, however, was not tolled by an appeal or
22         by a stay of enforcement: "If the *judgment* is not *renewed*, it becomes
       *unenforceable* at the conclusion of 10 years from its entry." (Ibid., italics

23

24  _____

[3] Section 337.5 provides, in pertinent part that the statute of limitation is "Within 10 years: *   *   * 3. [To bring
a]n action upon a judgment or decree of any court of the United States or of any state within the United States."
25  [4] "A lawsuit to renew a judgment is subject to a 10-year statute of limitations period. (§ 337.5, subd. (3).) This
10-year period does not ordinarily commence with the entry of judgment, but rather when the judgment
26  becomes final, i.e., after the determination of an appeal, or, if no appeal is filed, after the time in which an
appeal could have been filed." *The Cadle Company II, Inc. v. Sundance Financial, Inc.*, 154 Cal.App.4th 622,
27  624 (2007); citations omitted.

1   added.) *Section 683.210* provides that a judgment may be renewed even where
enforcement has been stayed. "Renewal during a stay of enforcement does not
2   affect the stay, but merely prevents the termination of the period of
enforceability." (Cal. Law Revision Com. com., Deering's Ann. Code Civ.
Proc. (1998 ed.) foll. *§ 683.210*, p. 172.) 138 Cal.App.4th at 1487-1488.

3   Thus, California dictates that the Texas judgment registered in this Court on August 20,

4   1996 became unenforceable under California Code of Civil Procedure section 683.020 when it was not

5   renewed as of August 20, 2006. Nothing in either *Watkins* or *Yorkshire West Capital* is to the contrary.

6           **B.      UNDER *MARX*, THE TEXAS JUDGMENT COULD NOT
7                     BE REGISTERED AGAIN AFTER THE RUNNING OF
                      THE CALIFORNIA STATUTE OF LIMITATIONS FOR
8                     AN ACTION ON A JUDGMENT.**

9                   Plaintiff concedes that 28 *U.S.C.* § 1963 and Rule 69 of the Federal Rules of Civil

10   Procedure dictate that the Texas judgment once registered in this Court was to be treated as a

11   California judgment, citing *Gagan v. Sharar*, 376 F.3d 987, 989, fn. 3 (9th Cir. 2004). And, plaintiff

12   concedes that *Marx v. Go Publishing Company, supra*, 721 F.2d 1272 governs this case. However,

13   plaintiff misreads a quote from *Marx*, to suggest that it "supports a ruling that as long as the Texas

14   judgment is enforceable it should be enforceable anywhere." To the contrary, the language that

15   plaintiff quotes stands for the proposition that plaintiff was prohibited from registering her Texas

16   judgment after the passage of ten years from the date of the Texas judgment.

17                   The quote from *Marx* states that "[t]he registration of the district court judgment under

18   28 *U.S.C.* § 1963, <u>the judgment not then being time barred, *Cal. Code Civ. Proc.* § 337.5</u>, commenced

19   anew the running of the applicable statute, which is *Cal. Code Civ. Proc*. § 681." *Id*. at 1273. What

20   this sentence means is that a judgment creditor with a Texas judgment can register the judgment in

21   California, **only so long as the ten year statute of limitations in California Code of Civil**

22   **Procedure section 337.5 has not run.**[5] Section 337.5, made applicable by *F.R.C.P*. Rule 69 and 28

23   *U.S.C.* § 1963, limits the registration of foreign judgment to the ten year time limit allowed under

24   applicable California law.

25   _____

26   [5] "A judgment that has become unenforceable under the [section 683.020] law may still be renewed by an
action if the 10-year statute of limitations provided by *Section 337.5* has not run." (15 Cal. Law Revision Com.
Rep. (1980) p. 2029, fn. 10.) *Section 337.5* provides that the statute of limitations is 10 years for "[an] action
27   upon a judgment . . . of any state within the United States," *Barnett v. Lewis*, 170 Cal.App.3d 1079, 1085, fn.7.

Under *Marx*, plaintiff had until November 17, 1998 to register her judgment in California or be forever barred from doing so. Of course, plaintiff registered her judgment in California on August 20, 1996 and avoided the section 337.5 statute of limitations. Whether plaintiff could have registered her Texas a second time might have been the question before the Court, had it not been for the fact that plaintiff missed the ten year deadline of section 337.5 for the second registration.

Because it is undisputed that the Texas judgment was obtained on November 17, 1988, and that the second registration of the Texas judgment occurred on January 11, 2008, it cannot be disputed that the second registration of the Texas judgment occurred more than ten years after entry of the Texas judgment. Indeed, it was nine years and almost two months too late!

### C. THE OPTION TO BRING AN ACTION ON THE TEXAS JUDGMENT IS NOT AVAILABLE TO PLAINTIFF MORE THAN TEN YEARS AFTER THE ORIGINAL JUDGMENT WAS ENTERED.

California Code of Civil Procedure section 683.050 permits a separate action to enforce a judgment to be filed at any time within the section 337.5 ten year window. Section 683.050 has been available to some judgment creditors who had missed the ten year renewal period of section 683.020, when tolling which is applicable to section 337.5, but applicable to section 683.020, made the two ten year periods not coterminous.[6] For example, in *Green v. Zissis, supra*, 5 Cal.App.4th 1219, the judgment creditor missed the deadline to renew the judgment under section 683.020, but could utilize section 683.05 to bring an action on the judgment, because the judgment debtor had been outside the State of California which tolled the statute of limitations under sections 351 and 337.5.

When an action is brought on the judgment, pursuant to section 683.050, the time to bring the action runs from the finality of the original judgment. Thus, in this case, plaintiff had only until November 17, 1998 to bring an action upon the Texas judgment. Plaintiff did not bring an action

---

[6] The 10-year period provided by Section 683.020 and the 10-year statute of limitations provided by Section 337.5 are not coterminous. The period prescribed in Section 683.020 commences on the date of entry and is not tolled for any reason. The statute of limitations commences to run when the judgment is final (see *Turner v. Donovan*, 52 Cal.App.2d 236 (1942) and may be tolled such as by the debtor's absence from the state (see Section 351)." Law Rev. Com. Comments to *Code Civ. Proc.*, § 683.050.

---

upon the Texas judgment in that time frame. Instead, she tried to re-register her Texas judgment in January 2008, which is clearly too late.

### D. PLAINTIFF'S NON-DISCHARGEABILITY ACTION DID NOT SALVAGE HER TEXAS JUDGMENT.

In February 1997, plaintiff brought an adversary proceeding in the Bankruptcy Court for the Northern District of California to declare the Texas Judgment nondischargeable in bankruptcy. Plaintiff did not seek (see Nondischargeability Complaint, Exhibit "A" to *Nelson Suppl. Decl.*), nor did plaintiff obtain (see Memo of Decision, April 18, 2008, Exhibit "A" hereto) a "judgment upon the Texas judgment". As made perfectly clear by Judge Jaroslovsky, when plaintiff sought to amend the nondischargeability judgment to obtain a money judgment in place of merely a declaratory judgment, nothing undertaken in the Bankruptcy Court impacts the enforceability of the Texas Judgment in California:

> There was no error in this court's judgment. When a bankruptcy court determines that a prior judgment entered against a debtor in state court is nondischargeable, the bankruptcy court may either declare the prior state judgment nondischargeable or enter a new money judgment against the debtor. Although this is a matter for the bankruptcy court's discretion, it should not enter a new money judgment except under unusual circumstances. *In re Sasson*, 424 F.3d 864, 874 (9th Cir. 2005).

> There were no unusual circumstances in this case. The original form of judgment was proper and was exactly what the court intended.[1] There is accordingly no basis in fact for the court to amend its judgment.

> It is neither necessary nor appropriate for the court to become involved in the District Court dispute except to observe that since this court has ruled that the Texas judgment is nondischargeable any enforcement of the Texas judgment, including ancillary proceedings in California, should seemingly proceed as if there had never been a bankruptcy.

> [Fn.1 reads: If the Clerk of the bankruptcy court issued an abstract treating this court's judgment as a money judgment then the abstract is in error, not the judgment.]

As contrary authority, plaintiff cites *Nat'l Union Fire Ins. v. Owenby*, 42 Fed. Appx. 59; 2002 U.S. App. LEXIS 14610 (9th Cir. Unpublished 2002), an unpublished opinion of the Ninth Circuit. Plaintiff's citation of this unpublished opinion is barred by Circuit Rule 36-3. Moreover, the copy of the "opinion" that plaintiff provided to the Court is not the verbatim report of the case, but a paraphrase in a journal. Attached hereto is the Lexis publication of this "unpublished" case, showing the clear notice at the top of the case that "RULES OF THE NINTH CIRCUIT COURT OF

1  APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE

2  RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT."

3      *__Defendant hereby moves to strike plaintiff's supplemental brief since its only purpose__*

4  *__was to present an argument based upon an unpublished case that should not have been cited at all__*

5  *__under Circuit Rule 36-3.__*

6      If the Court nevertheless considers *Nat'l Union Fire Ins. v. Owenby*, that case is readily

7  distinguished, because the adversary proceeding in this defendant's bankruptcy neither sought nor

8  obtained a money judgment. It merely is a declaration that the Texas judgment is nondischargeable. It

9  is not an action upon the judgment. Compare:  *Green v. Zissis, supra*, 5 Cal.App.4th 1219 and *Pratali*

10  *v. Gates* (1992) 4 Cal.App.4th 632, in which there were money judgments entered.

11      Also, if the Court does not strike the plaintiff's supplemental brief, it should note that

12  plaintiff admits in her argument in the supplemental brief that it is California law, not Texas law, that

13  governs enforcement of the judgment in California.

14     **E.  EVEN IF THE ADVERSARY PROCEEDING WERE A**
      **TIMELY ACTION ON THE JUDGMENT, IT IS NOW**

15        **UNENFORCEABLE.**

16      After arguing based upon *Nat'l Union Fire Ins. v. Owenby* that the adversary

17  proceeding was an action on the judgment under California Code of Civil Procedure section 683.050,

18  plaintiff goes through a lengthy arithmetic process intended to convince the Court that the

19  nondischargeability judgment extended the 1996 California judgment to December 17, 2008, based

20  upon the "finality" of the nondischargeability judgment on December 17, 1998. Plaintiff has it all

21  wrong!

22      The cases that address calculating from the date of finality of the judgment i.e. *Turner*

23  *v. Donovan, supra,* 52 Cal. App. 2d 236, 238-239 and *Green v. Zissis, supra*, 5 Cal.App.4th 1219,

24  make clear that calculation is from the finality of the original judgment, not a later renewal or

25  registration of it. In this case, it means the date upon which the Texas judgment became final in order

26  to trigger the running of the ten year statute of limitations under section 337.5. In the absence of any

27  evidence presented to the contrary, we must assume that the Texas judgment became final on

---

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO VACATE JUDGMENT, ETC.**       **Case No. 3:08-c-80004-PJH**

November 17, 1988. That means that plaintiff had until November 17, 1998 to bring an action in California upon the Texas judgment. Since the adversary complaint was originally filed on February 13, 1997, it would have met that statute of limitations if it were an action upon the judgment.

However, once plaintiff obtained her purported "judgment on the judgment", that judgment would have been immediately enforceable under Code of Civil Procedure section 683.010 ["... a judgment is enforceable under this title upon entry"]. *Jonathan Neil & Assoc., Inc. v. Jones, supra,* 138 Cal.App.4th at 1487-1488. Because the adversary judgment, if it was an "action on the judgment", would have been enforceable upon entry, the ten year limitation of enforcement in section 683.020, would have begun to run on April 27, 1998. See, Exhibit "D" to *Nelson Suppl. Decl*. And, if the purported "judgment on the judgment" began to run its statute of limitations on April 27, 1998, then the ten years ran out on April 27, 2008, when plaintiff failed to renew it.

Defendant is not trying to be cute or facetious by pointing out this logical extension of plaintiff's argument. (After all, defendant informed plaintiff that renewal of the declaratory judgment was not required and, subsequently, plaintiff stipulated to the vacating of the renewal of the nondischargeability judgment.) Rather, defendant is trying to make clear that there is no principled basis to anything that plaintiff is doing or arguing in this Court or the Bankruptcy Court. Plaintiff is flailing away, throwing any argument she can dream of, at the problem of the non-renewal of the California judgment. Fundamentally, what we have here is a problem of plaintiff's counsel's failure to calendar and renew the California judgment entered on August 20, 1996, for which plaintiff's counsel is valiantly, but ultimately futilely, seeking a remedy in any court that will give her one, rather than calling her malpractice carrier.

Plaintiff's attempt to argue that the adversary complaint was an "action upon the judgment" is just one more inappropriate avenue that plaintiff's counsel has explored in her attempt to avoid the inevitable consequences of her failure to renew the 1996 judgment.

**F. DEFENDANT IS ENTITLED TO A PERMANENT INJUNCTION PREVENTING PLAINTIFF FROM ANY FURTHER ATTEMPT TO ENFORCE HER JUDGMENT IN CALIFORNIA.**

Plaintiff does not even attempt to argue that defendant would be entitled to a permanent injunction against enforcement of the Texas judgment in California, if the Court agrees that the judgment is no longer enforceable under California Code of Civil Procedure section 683.020. Accordingly, the Court should enter such an injunction.

## III.    CONCLUSION.

Plaintiff's ability to enforce her judgment in California ended either on August 20, 2006 when she failed to renew her judgment under California Code of Civil Procedure section 683.020, or on November 17, 1998, when she failed to file a new action on the judgment under section 683.050. Because those two California Code sections were the only means under California law for plaintiff to keep her judgment alive in California, there is simply no legal basis for plaintiff to have filed a second registration of the Texas Judgment on January 11, 2008. Consequently, the registration of the Texas judgment on January 11, 2008 must be vacated, and all enforcement of plaintiff's judgment against defendant in California must be stopped by a permanent injunction.

Respectfully submitted,

DATED:  April 30, 2008.                    BARTLETT, LEADER-PICONE & YOUNG, LLP

BY: **/s/ Malcolm Leader-Picone #104620**
MALCOLM LEADER-PICONE
Attorneys for Defendant
BROOKS HENDERSON HADEN

1

## PROOF OF SERVICE

2

I, Malcolm Leader-Picone, declare that:

3

I am employed in the County of Alameda, California.  I am over the age of eighteen

4

years and not a party to the within action.  My business address is 2201 Broadway, Suite 803 Oakland,

5

CA  94612. On April 30, 2008, I served the following document(s) entitled:

6

**NOTICE OF MOTION AND MOTION OF DEFENDANT BROOKS HADEN FOR ORDER**
**VACATING JANUARY 11, 2008 REGISTRATION OF FOREIGN JUDGMENT AND FOR**
**PERMANENT INJUNCTION AGAINST ENFORCEMENT OF THE TEXAS JUDGMENT IN**
**CALIFORNIA**

7

8

9

upon the following person(s) in said action as follows:

10

| **By Email and UPS Overnight:** | **Chambers Copy By UPS Overnight:** |
|---|---|
| Rhonda I. Nelson, Esq.<br>Severson & Werson<br>One Embarcadero Center, Suite 2600<br>San Francisco, CA  94111<br><br>Telephone:   415-398-3344<br>Facsimile:    415-956-0439<br>Email:        rln@severson.com | Hon. Phyllis J. Hamilton<br>U.S. District Court Judge<br>U.S. District Court, Crtrm. 3, 17th Floor<br>U.S. Courthouse/Phillip Burton Building<br>450 Golden Gate Avenue<br>San Francisco, CA  94102 |

11

12

13

14

15

I declare under penalty of perjury under the laws of the State of California that the

16

foregoing is true and correct.  Executed at Oakland, California, on April 30, 2008.

17

**/s/ Malcolm Leader-Picone #104620**

18

Malcolm Leader-Picone

19

20

21

22

23

24

25

26

27

---

**PROOF OF SERVICE**                                                                                   **Case No. 3:08-c-80004-PJH**

Case 3:08-mc-80004-PJH    Document 21-2    Filed 04/30/2008    Page 1 of 2

**Entered on Docket
April 18, 2008**

**GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**

1
2
3
4
5
6

7          UNITED STATES BANKRUPTCY COURT

8          NORTHERN DISTRICT OF CALIFORNIA

9    In re

10   BROOKS H. HADEN,                              No. 96-13933

11                    Debtor(s).

12   _____/

13   IRETA IRBY,

14                    Plaintiff(s),

15          v.                              A.P. No. 97-1034

16   BROOKS H. HADEN,

17                    Defendant(s).

18   _____/

19          Memorandum on Motion to Amend Judgment
                   _____

20

21          In 1998, this court entered a judgment declaring that a prior Texas money judgment against debtor

22   Brooks Haden was nondischargeable.  Ten years later, for reasons related to proceedings in United States

23   District Court in California to enforce the Texas judgment, plaintiff Ireta Irby has asked this court to amend its

24   judgment to be a money judgment.  The motion is made pursuant to Rule 60 of the Federal Rules of Civil

25   Procedure.  Irby argues that the original form of judgment was "a result of counsel's error" and that the failure

26   of the court to include a money judgment was a "scrivener's error."

1

1         There was no error in this court's judgment.  When a bankruptcy court determines that a prior

2    judgment entered against a debtor in state court is nondischargeable, the bankruptcy court may either declare

3    the prior state judgment nondischargeable or enter a new money judgment against the debtor.  Although this is

4    a matter for the bankruptcy court's discretion, it should not enter a new money judgment except under unusual

5    circumstances.  *In re Sasson*, 424 F.3d 864, 874 (9th Cir. 2005).

6         There were no unusual circumstances in this case.  The original form of judgment was proper and was

7    exactly what the court intended.[1]  There is accordingly no basis in fact for the court to amend its judgment.

8         It  is neither necessary nor appropriate for the court to become involved in the District Court dispute

9    except to observe that since this court has ruled that the Texas judgment is nondischargeable any enforcement

10   of the Texas judgment, including ancillary proceedings in California, should seemingly proceed as if there had

11   never been a bankruptcy.

12        For the foregoing reasons, Irby's motion will be denied.  Counsel for Haden shall submit an

13   appropriate form of order.

14

15   Dated:  April 18, 2008

16

17

18   Alan Jaroslovsky
     U.S. Bankruptcy Judge

19

20

21

22

23

24
_____

25       [1]If the Clerk of the bankruptcy court issued an abstract treating this court's judgment as a money

26   judgment then the abstract is in error, not the judgment.

2

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Plaintiff - Appellee, v. RUTH L. OWENBY, Defendant - Appellant. In re: RUTH L. OWENBY, Debtor, RUTH L. OWENBY, Appellant, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Appellee.
No. 00-55909, No. 01-56389

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

42 Fed. Appx. 59; 2002 U.S. App. LEXIS 14610

June 4, 2002, Argued and Submitted, Pasadena, California
July 15, 2002, Filed

**NOTICE:**

**RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.**

SUBSEQUENT HISTORY: US Supreme Court certiorari denied by *Owenby v. Nat'l Union Fire Ins., 2003 U.S. LEXIS 2596 (U.S., Mar. 31, 2003)*

PRIOR HISTORY: Appeal from the United States District Court for the Central District of California. D.C. No. CV-99-11267-TJH. Terry J. Hatter, Chief District Judge, Presiding.

Appeal from the United States District Court for the Central District of California. D.C. No. CV-00-01098-CRM. Carlos R. Moreno, District Judge, Presiding.

DISPOSITION: Judgments of the district court affirming the bankruptcy court's order and denying debtor's motion affirmed; district court's order to remit funds vacated and remanded.

CASE SUMMARY:

PROCEDURAL POSTURE: In an appeal involving two suits in two district courts of the United States District Court for the Central District of California, defendant debtor appealed a district court's denial of her motion to recall and quash a writ of execution obtained by plaintiff creditor and vacate a levy on her bank accounts. She also appealed another district court's order affirming a bankruptcy judgment finding her debts to the creditor were nondischargeable.

OVERVIEW: Because the creditor reasonably relied on false representations made to it by the debtor, and the adversary action in bankruptcy resulting in the nondischargeability judgment was an "action on a judgment" starting a new 10-year period for enforcement in California, the rulings of the two district courts were affirmed, but an order to remit funds related to an account containing partnership assets was vacated. The bankruptcy court held the debts nondischargeable pursuant to *11 U.S.C.S. § 523(a)(2)(B)*. The bankruptcy court did not clearly err in concluding that the creditor signed the financial statement with the requisite intent or in determining that the creditor's reliance on her financial statement was reasonable. It was not unreasonable as a matter of law for the creditor to rely on a submitted statement of finances without conducting an independent investigation when it had no prior dealings with a potential borrower. The adversary proceeding qualified as an "action" under California law. *Cal. Civ. Proc. Code § 22*. The nondischargeability judgment also entailed the necessary recognition of a New York judgment.

OUTCOME: The judgment of the district court affirming the bankruptcy court's order of nondischargeability was affirmed. The district court's order denying the debtor's motion to recall execution and quash levy was affirmed; however, the district court's order to remit a sum from an account was vacated and the case was remanded for the district court to determine the nature of the funds in the account.

COUNSEL: For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Plaintiff - Appellee (00-55909): Herbert P. Kunowski, Esq., WILSON, ELSER, MOSKOWITZ & DICKER, Los Angeles, CA.

RUTH L. OWENBY, Defendant - Appellant (00-55909), Pro se, West Covina, CA.

Exhibit ___B___

RUTH L. OWENBY, Appellant (01-56389), Pro se, West Covina, CA.

For NATIONAL UNION FIRE INSURANCE COMPANY OF[**2] PITTSBURGH, PA, Appellee (01-56389): Herbert P. Kunowski, Esq., WILSON, ELSER, MOSKOWITZ & DICKER, Los Angeles, CA.

JUDGES: Before: HALL, SILVERMAN and RAWLINSON, Circuit Judges.

OPINION

[*60] MEMORANDUM *

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by *Ninth Circuit Rule 36-3.*

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Before: HALL, SILVERMAN and RAWLINSON, Circuit Judges

This consolidated appeal involves two underlying actions on a debt owed by Ruth Owenby, an attorney, to the National Union Fire Insurance Company of Pittsburgh ("National Union"). Owenby actually owes several debts to National Union, one of which was the basis for a federal default judgment in the latter's favor in New York in 1987. Since obtaining that judgment, National Union has attempted unsuccessfully to collect on the funds owed it in California. Owenby now claims that those efforts must stop because they are time-barred under California's ten-year statute of duration and appeals one district[**3] court's denial of her motion to recall and quash a writ of execution obtained by National Union and vacate a related levy on her bank accounts. Owenby also appeals the order of another district court affirming a bankruptcy judgment finding the debts she owes to National Union nondischargeable. Because we agree that National Union reasonably relied on false representations [*61] made to it by Owenby, and also

find that the adversary action in bankruptcy resulting in the nondischargeability judgment was an "action on a judgment" starting a new ten-year period for enforcement in California, we affirm the rulings of the two district courts below, but vacate an order to remit funds related to an account containing partnership assets.

I.

Owenby first appeals Judge Moreno's order affirming the bankruptcy court's holding that her debts to National Union are nondischargeable. The bankruptcy court held the debts non-dischargeable pursuant to *11 U.S.C. § 523(a)(2)(B)* because Owenby had provided false financial information to National Union in order to obtain its agreement to act as her surety. We have described *Section 523(a)(2)(B)* as setting forth seven elements that[**4] must be proved by a preponderance of the evidence:

(1) a representation of fact by the debtor,

(2) that was material,

(3) that the debtor knew at the time to be false,

(4) that the debtor made with the intention of deceiving the creditor,

(5) upon which the creditor relied,

(6) that the creditor's reliance was reasonable,

(7) that damage proximately resulted from the representation.

*In re Siriani, 967 F.2d 302, 304 (9th Cir. 1992).*

Owenby argues that the bankruptcy court committed clear error by dismissing her evidence that it was actually her securities broker who filled out the form supplying her financial information to National Union and by imputing to her an intent to deceive. The record shows that the financial statement is signed "Ruth L. Owenby," and the signature appears to match other documents signed by her. Owenby admitted to having signed documents in connection with the investment after discussing her financial information with the broker. While she claims that she signed the documents given to her while she was "in a hurry," as a member of the California Bar, Owenby was fully educated about the legal significance[**5] of signing formal documents including an avowal of accuracy. The bankruptcy court did not clearly err in concluding from these facts that Owenby signed the financial statement with the requisite intent.

Owenby has also not shown that the bankruptcy court erred in determining on the totality of the circumstances that National Union's reliance on her financial statement was reasonable. *In re Lansford, 822 F.2d 902, 904 (9th Cir. 1987).* Owenby materially inflated her net worth on the financial statment and reported assets that she did not in fact own. At the same time, she certified that the information on her financial statement was true and that she had sufficient assets to cover the note. Because she intentionally misled National Union on the financial statement, we view with disfavor her claim that it was not reasonable for National Union to rely on it. Id.

The record does not show that National Union was given reason to disbelieve the financial statement. The inconsistencies that Owenby identifies as "red flags" on appeal are specious. Her listing of "notes receivable" as $5,000 was not inconsistent with a lack of prior income on notes because notes receivable [**6]represent future expected income rather than past income. The amount of her reported investments over the prior five years was not inconsistent with her reported income which was $120,000, $205,000, and $300,000, over the [*62]prior three years, rather than the $80,000, $120,000, and $120,000 claimed in her brief. In any case, National Union had no reason to assume recent personal income was Owenby's sole source of funds for her reported investment. Owenby's reported investment activity was also not inconsistent with her reported lack of dividend, real estate, or "other" income, because she listed ownership of real estate valued at $400,000, and this was the obvious basis for the claimed investment activity. The financial statement reported that real estate did not generate any income.

The other "red flags" identified by Owenby were also not sufficient to find clearly erroneous the determination that National Union reasonably relied on the financial statement. Failure to report a personal accountant in the space provided for such information is of no relevance because National Union had no reason to presume that Owenby had such an accountant. Failure to provide bank information[**7] is of some relevance because it does indicate that the financial statement was incomplete. However, this failure did not indicate that the financial information that Owenby did provide was unreliable. Had National Union attempted to contact a bank without specific authorization to ascertain account balances, it would not likely have been given such information. Under these circumstances, it does not follow from a failure to provide a bank name or address that an applicant is attempting to hide the fact that she has inflated her reported assets.

Finally, although Owenby urges us to rule that it is unreasonable as a matter of law to rely on a submitted statement of finances without conducting an independent investigation when a lender has had no prior dealings with a potential borrower, this Circuit has never adopted such a bright line rule and has specifically disfavored it. See id.; *In re Candland, 90 F.3d 1466, 1470-71 (9th Cir. 1996).* We do not adopt it now.

II.

Owenby next argues that California's statutory period for enforcing judgments, which is governed by its "statute of duration" codified at *Cal. Civ. Proc. Code § 683.020,* was begun by an alleged but undocumented[**8] December 20, 1988 registration of the New York judgment against her in the Central District of California pursuant to *28 U.S.C. § 1963.* In the alternative, she claims that National Union's obtaining of an abstract of judgment from the court clerk on January 20, 1989 began the enforcement period. Since National Union's 1999 registration of the same judgment and the associated writ and levy on her bank assets occurred more than ten years after either of those dates, she argues that they were unlawful. National Union does not directly deny the original registration or that the period specified by California's statute of duration has run from that date. Rather it argues that its adversary action in bankruptcy for exemption from discharge and the 1999 registration were both actions brought within the period of California's separate statute of limitations which created new ten-year periods for enforcement.

The bankruptcy court's nondischargeability order provided a sufficient basis for enforcement of the New York judgment debt in California. In both California and federal district courts, an out of state judgment holder who wishes to enforce that judgment in state[**9] may bring a so-called action on a judgment to do so. See 18 *Moore's Federal Practice §§ 130.01, 130.30* (Matthew Bender 3d Ed.); 47 Am. Jur. 2d Judgments § 944 (1994); *In re Professional Air Traffic Controllers Organization, 226 U.S. App. D.C. 1, 699 F.2d 539, 544 (D.C. Cir. 1983); Pratali [*63] v. Gates 4 Cal. App. 4th 632, 637, 5 Cal. Rptr. 2d 733 (Cal.Ct.App. 1992); Green v. Zissis 5 Cal. App. 4th 1219, 1222, 7 Cal. Rptr. 2d 406 (Cal.Ct.App. 1992).* Under California law, which governs the enforcement and timing of such actions, the right to bring an action on a prior judgment is expressly recognized by *Section 683.050* of California's Code of Civil Procedure, and the time for bringing such an action is tied to California's statute of limitations rather than its statute of duration. *Cal. Civ. Proc. Code § 683.050.* The ten-year statute of limitations for actions on a judgment provided by *California Civil Procedure Code Section 337.5* is not coterminous with the ten-year period in the

statute of duration. *Cal. Civ. Proc. Code § 683.050* L. Rev. Comm. Comment.

An action on a judgment is the "customary way" to secure enforcement of an out of state judgment. *Restatement (Second) of Judgments § 18 cmt. f* (1982). [**10]The doctrine that a judgment creates its own cause of action is an entirely practical legal device, the purpose of which is to facilitate the goal of securing satisfaction of the original cause of action. See 47 Am. Jur. 2d Judgments § 945. In combination with the doctrine of "merger," whereby a cause of action is said to merge with a judgment upon it such that only the judgment survives as a basis for further litigation, the doctrine also provides a bar against attempts to opportunistically relitigate the same cause of action. See *Restatement (Second) of Judgments, § 18 cmt. b* (1982).

California has placed no particular limits on what may qualify for an action on a judgment beyond the inherent requirements of prosecution in an independent lawsuit and the fact that the process must necessarily involve a judge with proper jurisdiction who issues a judgment recognizing the validity of an out of state judgment. The nondischargeability action and judgment in this case satisfied those requirements. The adversary proceeding qualified as an "action" under California law. See *Cal. Civ. Pro. Code. § 22*. Owenby had notice of the action and an opportunity[**11] to be heard and present evidence. The nondischargeability judgment also entailed the necessary recognition of the New York Judgment. As this Circuit recently recognized, "there are two distinct issues [a bankruptcy court considers] in the dischargeability analysis: first, the establishment of the debt itself. . . and, second, a determination as to the nature of that debt." *In re Banks, 263 F.3d 862, 868 (9th Cir. 2001).* In this case, establishment of the debt required recognition of the validity of the New York Judgment. Finally, the bankruptcy judgment explicitly recognized the New York Judgment as part of the basis for the debt it found not dischargeable and affirmatively authorized National Union to pursue recovery on that debt.

National Union's adversary action in bankruptcy was also timely as an action on the earlier judgment. The New York Judgment became final on December 23, 1987. National Union's complaint to the bankruptcy court based on that judgment was filed on March 17, 1997. It thus fell within the ten year tollable period for bringing such actions established by *Section 337.5*.

Owenby also raises *Sections 1710.55 of the California Civil Procedure Code* [**12]as a separate bar on enforceability. These claims are misplaced. On its face *Section 1710.55* governs actions in California rather than

federal courts and is limited to actions to enforce the judgments of other state courts. *Cal. Civ. Proc. Code § 1710.10(c)*.

Because the bankruptcy court's nondischargeability ruling was an action on a judgment commencing its own ten-year [*64] enforcement period, we do not reach National Union's alternative claim that it re-registered the New York Judgment in 1999. Even assuming arguendo that the judgment was not validly re-registered and that the writ of execution could not properly be issued on the registration, we would still affirm the district court's denial of Owenby's motion to recall and quash the writ and vacate the levy. Because the nondischargeability order provided a valid basis on which to levy assets in order to satisfy the debt to National Union, the fact that the writ was issued on the 1999 registration rather than the nondischargeability order was at most harmless error. *Fed. R. Civ. P. 61*.

III.

The parties have agreed that one of the bank accounts at Bank of America which was levied, account # 023344-10217, is an account containing[**13] funds from a law partnership in which Owenby and her son are the sole and equal partners. *Cal. Civ. Proc. Code § 708.310; Cal. Corp. Code § 16504*. After learning that one of the levied accounts was a partnership account, National Union obtained a charging order from the district court, and the court then ordered what appears to be fifty percent of the account remitted to National Union.

Owenby claims that this order reflects two legal errors. First she claims that National Union is not entitled to fifty percent of the account because it may only charge her share of profits and any distributions and may not otherwise touch partnership assets. Second, Owenby claims that part of her interest in the partnership account is subject to exclusion as "earnings" exempted under *Sections 704.070(b)(2)* and *706.051(b)* of the California Civil Procedure Code.

Owenby correctly asserts that the only transferable interest of a partner in a partnership is the partner's share of profits and the right to receive distributions. *Cal. Corp. Code §§ 15026, 16503*. A partner's right in specific partnership property is not subject to enforcement on a money judgment, except on a claim against the partnership.[**14] See *Cal. Corp. Code §§ 15025, 16504*. A partner's "interest in the partnership," which constitutes profits and the right to distributions, is subject to such enforcement. *Cal. Civ. Proc. Code § 708.310*.

Having scrutinized the record, we can not determine the nature of the funds in account # 023344-10217 or whether the district court considered whether they were partnership assets, or monies for the personal use of Owenby and her son. We therefore vacate the district court's order to remit $2,684.61 to National Union and remand for it to determine the nature of the assets and, at its discretion, to remit that portion representing Owenby's profits and distributions.

Since we can not determine the nature of the funds in the partnership account, we do not reach Owenby's claim that they are exempt as the "earnings" of an "employee" under *California Civil Procedure Code Sections 704.070(b)(2)* and *706.051(b)*.

CONCLUSION

For the foregoing reasons, the judgment of the district court in Case. No. 01-56389 affirming the bankruptcy court's order of nondischargeability is AFFIRMED. The district court's order in Case No. 00-55909 denying Owenby's Motion to Recall Execution and Quash[**15] Levy in Case No. 00-55909 is also AFFIRMED. The district court's order to remit $2,684.61 is VACATED and the case is REMANDED for the court to determine the nature of the funds in account # 023344-10217, and the amount that may be charged as Owenby's share of [*65] profits as well as to take any other actions consistent with this judgment.